[Cite as *Freels v. Powers-Freels*, 2015-Ohio-3915.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| JASON R. FREELS | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2015-CA-9 |
| | : | |
| v. | : | T.C. NO. 14DR112 |
| | : | |
| PAULA C. POWERS-FREELS | : | (Civil Appeal from Common Pleas |
| | : | Court, Division of Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ___25th___ day of ____September____, 2015.

. . . . . . . . . . .

MICHAEL A. HOCHWALT, Atty. Reg. No. 0017688, 500 Lincoln Park Blvd., Suite 216, Dayton, Ohio 45429
        Attorney for Plaintiff-Appellee

CRAIG M. SAMS, Atty. Reg. No. 0089716, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} Paula Powers-Freels appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, which denied her motion to dismiss a complaint for divorce filed by her husband, Jason Freels.   The motion had asserted that Freels was not a resident of Ohio, and thus that the court lacked jurisdiction to entertain

his complaint for divorce.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3} Freels filed a complaint for divorce in Clark County, Ohio in February 2014. At that time, Freels was on active duty in the United States Air Force, stationed in Maryland, and did not live in Ohio; Powers-Freels lived in the Netherlands. Powers-Freels filed an answer in which, among other things, she stated that the complaint did "not meet the requirements under 3105.01 [sic] of the Ohio Revised Code." In August 2014, Freels filed an amended complaint with leave of the court. The amended complaint differed from the original complaint only in the correction of one typographical error. In October 2014, Powers-Freels filed a motion to dismiss the complaint on jurisdictional grounds, because "the parties do not meet the minimum residency requirements of R.C. 3105.03."

{¶ 4} A hearing was held on November 4, 2014. Powers-Freels was not present at the hearing, but she was represented by counsel; Powers-Freels's attorney stated that she lived in the Netherlands and did not have the resources to attend. Freels was the only witness to testify with respect to the motion to dismiss. After hearing the evidence, the trial court overruled the motion to dismiss from the bench. The hearing continued that same day to address issues related to the divorce. The decree of divorce was entered in November 2014. A judgment entry overruling the motion to dismiss was filed on January 29, 2015.

{¶ 5} Powers-Freels appeals from the trial court's denial of her motion to dismiss, raising one assignment of error.

**The trial court erred in denying Appellant's motion to dismiss for lack**

**of jurisdiction over the divorce.**

{¶ 6} The grounds and procedures for obtaining a divorce in Ohio are purely statutory. "Divorce is a creature of state statute, and the power of the General Assembly over the entire subject of marriage, as a civil status, and its dissolution, is unlimited except as restricted by the state and federal constitutions." *Barth v. Barth*, 113 Ohio St.3d 27, 2007-Ohio-973, 862 N.E.2d 496, ¶ 9, citing *Coleman v. Coleman*, 32 Ohio St.2d 155, 159, 291 N.E.2d 530 (1972).

{¶ 7} R.C. 3105.03 provides, in pertinent part, that the plaintiff in an action for divorce "shall have been a resident of the state at least six months immediately before filing the complaint." The Supreme Court of Ohio has stated that the word "resident" in R.C. 3105.03 "means one who possesses a domiciliary residence, a residence accompanied by an *intention* to make the state of Ohio a permanent home." (Emphasis sic.) *Barth* at ¶ 12, citing *Coleman; Glassman v. Glassman*, 75 Ohio App. 47, 51, 60 N.E.2d 716 (1st Dist.1944)*.* This court has similarly held that the word "residence" means "domiciliary residence," a concept which has two components: (1) an actual residence in the jurisdiction, and (2) an intention to make the state of jurisdiction a permanent home. (Citations omitted.) *Hager v. Hager*, 79 Ohio App.3d 239, 244, 607 N.E.2d 63 (2d Dist.1992).

{¶ 8} " 'Domicile' ordinarily has a broader meaning than residence. Domicile conveys a fixed, permanent home. It is the place to which one intends to return and from which one has no present purpose to depart. * * * Domicile has been described as the relationship which the law creates between an individual and a particular locality. A party's domicile generally coincides with his place of residence. However, while an

individual may have several residences, he can be domiciled in only one place at a given time." (Citations omitted.) *Id.*; *McMaken v. McMaken*, 96 Ohio App.3d 402, 404-405, 645 N.E.2d 113 (2d Dist.1994).

{¶ 9} The burden of proving domiciliary residence rests upon the plaintiff, and the plaintiff must prove it by a preponderance of the evidence. *Hager* at 244; *McMaken* at 405. The fact of residence in a location is *prima facie* evidence of domicile there, but is rebuttable by proof to the contrary. *McMaken at 405,* citing 36 Ohio Jurisprudence 3d, Domicile, Section 19 (1982). However, an intention to make a permanent home is known only by the individual concerned and is, therefore, largely a subjective determination. *Id.*, citing *Coleman.*

{¶ 10} Every person must have a domicile somewhere, and that domicile is not lost until a new one is acquired. *Holtz v. Holtz*, 2d Dist. Greene No. 2005-CA-43, 2006-Ohio-1812, ¶ 18, citing *E. Cleveland v. Landingham,* 97 Ohio App.3d 385, 390, 646 N.E.2d 897 (8th Dist.1994). "A person abandons his old domicile and acquires a new one only when he chooses a new domicile, establishes an actual residence in the chosen domicile, and demonstrates a clear intent that the new domicile become his primary and permanent residence." *Id.* In a divorce action, a plaintiff's domicile is a question of intent and the plaintiff's representation will be accepted unless facts and circumstances indicate that his or her claimed intent cannot be accepted as true. *Holtz* at ¶ 19, citing *Polakova v. Polak*, 107 Ohio App.3d 745, 748, 669 N.E.2d 498 (1st Dist.1995).

{¶ 11} In the case of a military service member, his or her domicile remains as it was prior to enlistment throughout the course of military service, unless a new domicile is voluntarily selected. *Holtz* at ¶ 18-20, citing *Heiney v. Heiney*, 157 Ohio App.3d 775,

777, 813 N.E.2d 738 (6th Dist.2004). "Every person must have a domicile somewhere, and that domicile is not lost until a new one is acquired. A person abandons his old domicile and acquires a new one only when he chooses a new domicile, establishes an actual residence in the chosen domicile, and demonstrates a clear intent that the new domicile become his primary and permanent residence." (Internal citations omitted.) *Id.* at ¶ 18.

{¶ 12} The domiciliary residence of a person in the military is a question of intent. *Id.*, citing *Spires v. Spires*, 7 Ohio Misc. 197, 201, 214 N.E.2d 691 (Meigs C.P.1966). A military person's actual residence does not operate to change his pre-enlistment domiciliary residence, because his actual residence is not the result of his own volition. *Id.; Prudential Prop. and Cas. Ins. Co. v. Koby*, 124 Ohio App.3d 174, 705 N.E.2d 748 (11th Dist.1997). "A military person's designation of a state other than Ohio as his or her domiciliary residence on a military form required for tax purposes is not determinative of that person's true intent to make or keep Ohio as his or her domiciliary residence." *Holtz* at ¶ 20, citing *Hager,* 79 Ohio App.3d 239, 244-245, 607 N.E.2d 63.

{¶ 13} A trial court's decision as to whether it has jurisdiction is a legal determination, which is reviewed on appeal de novo; its weighing of the evidence as to a party's intent to establish a domiciliary residence in the state is a factual question, which we review for an abuse of discretion.

{¶ 14} Freels testified at the hearing that his address was a specific location in New Carlisle, Ohio, and that New Carlisle had been his home for his "entire life," but he was currently on active duty in the U.S. Air Force and was then stationed in Maryland. Freels and Powers-Freels had married in 2004 and had moved numerous times during the

marriage. They had lived in Arizona, England, Florida, Texas, Louisiana, Saudi Arabia, the Netherlands, and Turkey. They were separated by the time Freels was assigned to Maryland, so Powers-Freels had never lived there with Freels. At no time during their marriage or during Freels's active duty had he lived in Ohio.

{¶ 15} Freels testified that he grew up in New Carlisle, Ohio, and considered it his "home." He spent his entire life in New Carlisle prior to joining the Air Force, and he enlisted in Ohio. At the time of the hearing, he had a bank account and was a member of a church in New Carlisle, and he received mail at his New Carlisle address. Freels stated that, unless he were promoted to Lieutenant Colonel, he would soon be required to retire with 20 years of active service; he was beginning to plan for that eventuality, and he planned to return to New Carlisle, where his parents and many family members and friends still live. Freels had no plans to stay in Maryland, because he had no ties there, it was significantly more expensive than Ohio, and the taxes were higher as well. He usually spends his leaves in New Carlisle, Ohio, and had been to Ohio on leave three times in 2014.

{¶ 16} Freels acknowledged that his December 2012 Defense and Accounting Service Military Leave and Earning Statement listed Arizona as his residence. He stated that he was actually stationed in Turkey at that time, but that active duty servicemen can list any state as their residence, and he had listed Arizona "for financial purposes" because Arizona did not require active duty members of the military to pay income tax. By the time this form was filed, Freels had not lived in Arizona since 2004. Freels's January 2014 Leave and Earning Statement listed Ohio as his state of residence.

{¶ 17} On cross examination, Freels acknowledged that his most recent driver's

license, an Ohio license, had been issued in February 2014, only two weeks before the filing of his first complaint. He testified, however, that the issuance of his Ohio license had been treated as "a renewal," because the "DMV" had been able to access the record of his prior Ohio license. He had Arizona and Ohio licenses in the intervening years. Freels also stated that, before being assigned to Maryland, he had not lived stateside since 2008. He had been registered to vote in Arizona until recently, when he switched his voter registration to Ohio; he did not state when he had last voted in Arizona, if ever. Freels testified that his recruiter's office was in Dayton and that he took his military physical and entrance test in Columbus. Freels also testified that, when he lived in Arizona from 2000 until 2003, while he was attending Arizona State University, he considered Arizona to be his domicile, but that when he subsequently went to England, he again considered Ohio his home.

{¶ 18} Based on this evidence, the trial court made the following finding:

* * * In this case, the only evidence presented to the Court, and in my opinion it was credible evidence, suggests that Mr. Freels has considered the State of Ohio, and in particular Clark County, Ohio to be his domiciliary residence other than for a brief period of time in the early 2000s concerning the State of Arizona. His intent is [of] foremost importance in the case, not where he physically lands. It doesn't matter that he is physically living here; it's understandable that he is not because he is serving this country pursuant to orders and is stationed elsewhere. That is why the law is set up the way it is. * * *

The court also noted that Freels's amended complaint, filed in August 2014, states that

Freels had been a resident of Ohio for the previous six months, and the court found this assertion to be credible. Accordingly, the court overruled Powers-Freels's motion to dismiss.

{¶ 19} The determination of the residence of a military service member may involve different considerations than non-military individuals. As noted above, an "actual residence" is generally one component of a "domiciliary residence," and we have held that the "domiciliary residence of a person in the military is simply a question of intent," and that a military person's current physical residence does not operate to change his pre-enlistment domiciliary residence. *Holtz* at ¶ 20. These holdings and other cases involving active-duty military service members recognize that the actual physical residence of a military serviceperson does not necessarily align with his or her domiciliary residence for jurisdictional purposes.

{¶ 20} Freels's testimony about his intent to remain domiciled in Clark County throughout most of his years of military service was largely undisputed. Freels was unequivocal that he had considered New Carlisle to be his home, except for a period prior to 2004 when he had been in school in Arizona. Prior to his most recent assignment to Maryland, Freels had not lived stateside since 2008. Powers-Freels's attorney elicited testimony from Freels about having alternated between Ohio and Arizona driver's licenses between 2000 and early 2014, at which time he changed his driver's license from Arizona to Ohio. This evidence was probative, but it did not compel the conclusion that Freels intended to be domiciled in Arizona, considering his lengthy deployments overseas during this period. Based on the evidence presented, particularly with respect to Freels's intent and his long-term and ongoing connections to Clark County, the trial court did not

abuse its discretion in concluding that Freels was a resident of Ohio under R.C. 3105.03 at the time of the filing of his complaint, and it did not err in finding that the court had jurisdiction to entertain his complaint for divorce.

{¶ 21} Powers-Freels argues that the amended complaint, filed six months after Freels's initial complaint, did not cure any jurisdictional problem with the initial complaint. In light of our conclusion that the trial court did not err in finding that Freels was domiciled in Ohio at the time of the original complaint, we need not address this issue. The trial court found that "Mr. Freels ha[d] considered the State of Ohio, and in particular Clark County, Ohio, to be his domiciliary residence other than for a brief period of time in the early 2000s * * *," and that Freels's intent, not his physical presence, was determinative. The evidence did not suggest that there had been any change in Freels's intent to make Ohio his home between the filing of the original complaint and the filing of the amended complaint.

{¶ 22} The assignment of error is overruled.

{¶ 23} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Michael A. Hochwalt
Craig M. Sams
Hon. Thomas J. Capper